Seney, J. (orally).
Pleadings were filed in the lower court, and motions to strike out made by both parties, and as the result of the motions the court required the parties to put their causes of action and causes of defense in what is termed a substituted, petition and substituted answer and reply. Under the averments thus made in the pleadings, the case was submitted to-the court without the intervention of a jury. The court was-requested to make certain findings of facts, which it did, and' on these findings of facts it rendered judgment in favor of the First National Bank and against the "Van Wert National-Bank.
There was a motion made for a new trial, which was overruled with exceptions, and judgment rendered upon the finding. Petition in error was filed in this court to reverse the-action of the court below, upon the ground that the finding • and judgment is against the law and the evidence.
It is not necessary to notice the averments of the pleadings, because on an investigation of the facts in the case, it is-found by the court that the material facts in the case are not ■ probably in dispute, so that the decision in this court is only on the application of the law to what is necessarily, or what is properly conceded in the court below to be the facts surrounding these two parties at the time of the cause of action' complained of.
The facts in substance are these: On November 6, 1889, a person purporting to be the superintendent of the Patrons Warehouse Company, signed a check payable to the order of W. S. Miller, or bearer, for four hundred and seventy dollars and some cents, upon the First National Bank of Van Wert.. *132 This purported check was taken to the Van Wert Natioual ■Bank, and the Van Wert National Bank paid the check.
The same day, about two o’clock, in the regular course of business existing between these two banks, the teller of the Van Wert National Bank took this check to the First National Bank with some other checks, and the First National Bank paid it to the teller of the Van Wert National Bank. The First National Bank, probably the next day, in balancing the account of this Patrons Warehouse Company, with .■other checks returned to the Patrons Warehouse Company, found this check that had been cashed by the Van Wert National Bank and subsequently cashed by the First National Bank. On the 8th of November, Mr. Corbet, the superintendent of the warehouse company, notified the First National Bank that the check was a forgery, and also notified them in effect not to ■say anything about it — to keep still — that they were going to start an investigation to see if they could catch the perpetrator of this -wrong.
They did not deliver the check to the First National Bank, but only pronounced it a forgery. The Warehouse Company retained the check. So that it was known to the First National Bank on the 8th of November, two days after the Van Wert National Bank had cashed the check, that the Warehouse ■Company claimed that it was a forgery. With that knowledge the Warehouse Company retained the check, and did not surrender it nor demand any payment of the First National Bank.
As a result of that, the Warehouse Company sent to Chicago for one of Pinkerton’s detectives and brought him here. He arrived here probably on Sunday morning.
Sunday evening he met one of the officers of the Van Wert National Bank, and some discussion took place as to the forgery, or what was supposed to be a forgery. They went into the Van Wert National Bank, the detective and probably • an officer of the Warehouse Company, on the following Monday morning, and made some inquiries of the Van Wert Na *133 tional Bank, and it was there discussed as to this forgery y and the Van Wert National Bank was also instructed by the Warehouse Company, as well as the detective, to keep still' about it, to say nothing about it; they were going to investigate the thing; “We are going to investigate this thing ourselves, and you folks keep still and convey no information to any one concerning it.”
On the Friday preceding this Monday, the teller of the First National Bank visited the Van Wert National Bank, and inquired of one of its officers something in relation to the check, as to whether they knew the person to whom., they had paid it. Some conversation took place between them, and an officer of the Van Wert National Bank inquired' of this teller of the First National Bank, “ anything the matter with the check ? ” and his reply was, “ No, it is all right. There is nothing the matter with it. It is all right.”
These are, in substance, the material facts of the case that-are undisputed.
So, applying the law to these conceded facts, the case is very-simple; nothing difficult about it, as the law has been settled - for years.
The essence of negligence in this class of cases is promptness in time and a demand on the party which you seek to-hold. It has been argued as to the original transaction in this case, whether the Van Wert National Bank was negligent in<not ascertaining to whom they were paying this money, and whether the First National Bank was negligent in paying itr~ because it was bound to know the signature of its depositor..
It has got past that in this case. After all this is done, could the Warehouse Company hold the First National Bank, is the first proposition. First, as I have said, the essential-, facts of negligence in this class of cases is promptness in time ■ and demand, so that the party that is first in the wrong may protect himself. Mr. Corbet, the superintendent representing the Warehouse Company, on the 8th of November, notified the bank that it was a forgery, but did not deliver the check to ■ *134 •the bank in order that they could protect themselves ; he retained the check, and did not demand of the bank payment of ¡the check, but instead he retained the check and placed it beyond the power of the First National Bank to make themselves whole; plaeed it beyond the power of the First National Bank to start an investigation because they had not the check; placed it beyond its power to protect its rights against the Van Wert National Bank because it had not the check. Although it said to the First National Bank that it was •a forgery, yet by not demanding the payment, and withhold dng the cheek from them, it was as much as to say to it, “ Although it is true it is a forgery, we’ll not look to you for payment.” So that, so far as the first step in the case is con'Cerned, the Warehouse Company was guilty of such negligence that they could not have made the First National Bank pay, because of their failure to return the check, and because of •their failure to demand payment.
Of course, if the Warehouse Company can’t, make the First National Bank pay under the facts disclosed in this bill of exceptions, the payment by the First National Bank was a voluntary payment, and as it was voluntary on its part, on ¡that ground it has no cause of action against the Van Wert National Bank.
But go a step further; in addition to the warehouse comtpany having notified both these banks to keep still, “We’re going to investigate it ourselves, you have nothing to do with it,” the First National Bank never demanded of the Van Wert National Bank payment of this check until some time in December. True, Mr. Corbet and Mr. Richie were at the Van Wert National Bank on the- 19th day of November, and they were there wanting to know what the Van Wert National Bank proposed to do with reference to this check. The reply of the officer of the bank was, “ We have nothing to do with you. If there is any trouble in this, our dealings are with the First National Bank.” So that it was Mr. Richie and Mr. Corbet -appearing at the Van Wert National Bank on the 19th day of *135 ■November; it was not the First National Bank there with the •cheek tendering it back and demanding payment, but it was the Warehouse Company that was doing that. So that the first information the Van Wert National Bank received from the First National Bank that it was a forgery, and that they looked to them for payment, was in December, the first part of December. This is such negligence on the part of the First National Bank as prevents them from recovering from the Van Wert ■National Bank.
Why?
The Van Wert National Bank, when the check was first presented to it, paid it. When the demand was made •upon it to pay, it must be in the same position, not different, but in the same position as far as possible that it would have been if the First National Bank when the •check was presented to it first by the Van Wert National Bank for payment, had refused payment. In other words, in December nothing should have occurred, no negligence of •the First National Bank should have intervened to the prejudice of the Van Wert National Bank to place them in a position other than what existed on the 6th day of November when the Van Wert National Bank presented the check for payment.
Now, the reason of all this, is: That when the First National Bank had notice of the forgery, if it desired payment of ithis check from the Van Wert National Bank because it was ¡a forgery, or a forged check, it should have placed the Van Wert National Bank in position to protect itself. Not that somebody else has done what probably it would have done; but it is to be the judge of that. If it is to pay because •of this, it must have the opportunity to start the investigation in its own manner, in its own way, and according to its own judgment, so that it will mot have to sustain a loss if it can prevent it. It relied on the First National Bank having accepted the check as genuine. So on the 4th day of December it was not in that position that it would have been if the check (had been refused. A month had intervened, and it had no op *136 portunity to protect itself by reason of the check being returned-to it, by reason of demand being made that it was to-be held' for the check. It had no sueh opportunity as that during this month, and it hadn't because of the negligence of the First National Bank ; that is why it could not protect itself.
So that is another reason why the Van Wert National Bank could not be held for this paper.
Another. When the officer of the First National Bank went to the Van Wert National Bank on Friday, November 8th, to make inquiries as to who these parties were that had drawn this money, the information came from this officer to the inquiry proposed by the officer of the Van Wert National Bank, “ What is the matter with the check ? Anything wrong ?" The answer was made, “ It is all right." At the same time they knew that Mr. Corbet, the superintendent, had told them it was a forgery. They ought to have spoken then. By their answer they threw the Van Wert National Bank off its guard. By their answer they prevented the Van Wert National Bank from saving itself from the loss it might sustain because of- cashing the forged tcheck. They should have spoken the truth then, if they did not, they can’t speak it a month after in court; they won’t be-heard to say, what we asserted as truth then is false.
That is another reason why the Van Wert National Bank should not pay this amount of money.
All these reasons are based on negligence. But the case is not that of one party having suffered the loss by negligence of the other. It is beyond the question, of what negligence the Van Wert National Bank was guilty in cashing this check, or what negligence the First National Bank- was guilty by reason of not knowing the signature of its own depositor. These two classes of negligence are out of consideration in the case from the fact that the loss is sustained by this other and different negligence of the Warehouse Company and the First National Bank.
For these reasons the judgment of the lower court is reversed, the finding of facts set aside, and a new trial granted!..